In the name of Jesus, the Lord, and the peace of His Holy Church, Christians of Jon Harder. Mr. Harder brings two issues before the court for consideration this morning. First of all, and the most important, is whether or not Judge Simon appeared in his determination pertaining to the scope of the scheme to be flawed, reportedly perpetrated by Mr. Harder. That issue basically is whether or not the scheme would be flawed and extended beyond both the scope of activity and time. The counts of conviction, which were two, counts 13 and 56, both of which involved activity and conduct taking place in December of 2007. The second issue involves the question of whether or not the government's letter-writing campaign impaired the hearing process in a manner such as to require the court to recognize the imperatives of justice with respect, as far as Mr. Harder was concerned. On the first question, what's our standard of review? Is it clearly erroneous? Well, clearly erroneous. I'm not clear in convincing, just clearly erroneous. Clearly erroneous, Your Honor. Yes, I have to establish some basis for you to find that there's a definite and firm basis for recognition of a mistake in the determination by Judge Simon. I suspect that there is such a definite indication of a mistake in Judge Simon's failure to comment upon, to remark upon, and to repress the testimony of Timothy Duflois, who was the external counsel for Son West. As I go forward in my argument, I will explain why that's important. Why it is that, clearly, if you look at the structure of Judge Simon's opinion, you will see that his exclusion and failure to address Mr. Duflois' testimony affects the finding that he made with respect to intent to deceive. I'm going to ask the Court to be mindful of three things, three sources, if you will, of data. The first is Judge Simon's opinion in itself. I'm going to direct the Court in its analysis specifically to the subpart F section, which addresses the intent to defraud. I'm going to ask the Court to consider Mr. Duflois' testimony in its complete existence at Excerpt of Record 43 through 447. And I want you to consider also some comments by Judge Simon that he made at the conclusion of the Peking of Evidence, and before closing argument, have found in the supplemental Excerpt of Record 220-240. Again, standard is that clearly erroneous. Did Judge Simon make a mistake by failing to address the testimony of Attorney Duflois, by failing to address the conduct of the attorneys that were involved in the activities of the enterprise, known as SunWest, in terms of the investment vehicles and investment business that was operated by SunWest? Counsel, is it your position that had the District Court considered the involvement of the attorneys, the intent of your client would have been indicated? Exactly, Your Honor. How so? Well, I would direct your attention to that part of Judge Simon's opinion, which begins at 1225. 1225? 1225, and I can give you the Excerpt of Record reference, but it's at 1225. And basically there, what you had was Judge Simon proceeding through six representations that he found to be misrepresentations. Let me follow the flow of his thinking. I'll watch these six representations that were made, and then he said, in each case, in each case, they became misrepresentations because of a failure to disclose. So we deal in each instance with this failure to disclose. And in, for example, the first representation was that an investor's money would be invested in a single participant. Judge Simon found that to be false or misleading, quote, without disclosing the existence of pervasive coin. And if you go through that list, but I don't have a lot of time here, so excuse me. If you go through that list in each instance, Judge Simon says, what's wrong with the half-truth that we have is that there's a failure to disclose. And there's two things that he says the enterprise failed to disclose, and he basically lays the responsibility for the failure to disclose on Mr. Harder's feet. And on that basis, he says, well, Mr. Harder then had an intent to deceive. And it's only the intent to deceive in a Treadwell kind of focus, but therefore he had the intent to deceive. But if you look at the testimony, and for example, in ER 390, Judge Simon asked Judge Law whether Mr. Harder had played a role in the decision not to disclose, quote, the historical practice of intercompany lending and importation. Judge Law responded, no, no, he didn't play a role. No, quote, at no time did he tell us not to disclose that. That was a lawyer-driven decision by a committee of all of us. Well, wasn't the district court entitled to accept or reject as much of that testimony as he thought was consistent with the other record evidence? Your Honor, in my opinion, no. And here's why. Rule 32 says if a controverted matter, if a controverted matter is a successful procedure, the court has to resolve it. I suggest, well, how I read that corrective from the rules is that it serves to protect a defendant's due process interest in their sentencing. This was a sentencing proceeding. We agreed upon a procedure to make a determination, a fair and open determination based on facts, not just guesses. The facts is to what had taken place. Had Mr. Carter committed a scheme or fraud as outlined in the indictment outstanding, the fact that that scheme or fraud as outlined in the indictment changed over time from something that involves stealing money to basically a nondisclosure type of thing. But there was a guilty plea, so. Ah, yes, but, yes, there was a guilty plea. Yes, there was a guilty plea to two counts that dealt with preferred membership interests, not tick. Yes, actually, but that was the reason for the hearing, for the court to decide whether or not the sentence should also encompass relevant conduct related to the tick. Exactly. In fact, it was more than that because we had entered into an agreement where we specifically said it was not just kind of a relevant conduct. It kind of became that, but initially it was the idea that we're going to look at the indictment, the text of the agreement says, as alleged in the indictment. That was what the purpose of that hearing was. And when you run through those six bases that Judge Simon found as supporting the inference that Mr. Carter had an intent to deceive from prior to 2006, and you didn't really figure out exactly when that starts, but prior to 2006, in each instance, Mr. Goswam testified, no, he didn't make those decisions. Those decisions weren't his. The lawyers made those decisions. Those were our decisions. We decided, we controlled the disclosure process. Yes, I understand that, okay, well, Mr. Carter was the president of SunWest. He was the individual ultimately responsible, and the only individual charged. But at some point in time, the law has to start looking at how business really operates and what lawyers are doing. And in this instance, once again, I suggest that it didn't happen, and it didn't happen in a way that I feel is extremely inappropriate or unfair. I'd like to reserve some time for a follow-up. I do. I'd like to reserve 30 seconds. 10 seconds. I want to address the second issue. I'm just going to lay that out to you as follows. We had an agreement for a fair determination, for fair hearing. Well, we made that agreement on the back side. A U.S.A. government commenced a letter-writing campaign directing toward bombarding the court with as much squirrelish material as possible. I don't think that's right.  All right. Thank you, counsel. Good morning. May it please the Court. Sonya Ralston for the United States. The most important thing to understand about Attorney Juswant's testimony is that he only testified about the written disclosures. All the lawyers were involved with was the written disclosures, and yet you had investor after investor testify that oral representations were made to them that were directly contradictory to the facts on the ground. The district court believed those investors. It believed David Thurber, the head of sales at SunWest, who said, I didn't know anything about the intercompany lending. If I had known, I wouldn't have made a single one of these sales. He said the sales pitch between the TIC and PMI investments was exactly the same. You can find that at SCR 474, which the district court credited at excerpts of Record 47. And you can find the testimony of investors like Tamara Sanner, who represented 26 TIC investors, who said that she had numerous oral conversations, including personally with John Harder, where he told her that the money was not taken from one project and used on something else, where she was reassured that everything was on the up and up. And the lawyers had nothing to do with any of that. So it just doesn't matter what the attorney said. And the attorney's testimony can only go so far. He only knows about what he was involved in, which was the written disclosures. Secondly, the court did address the primary contention that the attorney made, which if you look at excerpts of Record 419 to 410820, he says no investor was ever told how money from a single property would stay there. Well, John Harder personally testified to that same fact, and the district court rejected it. At ER 57, the district court said to the extent they're claiming that many investors were told, I find that perhaps some were, but not many, that that testimony is simply what the court called, quote, too inconsistent, close quote, with the testimony of the investors, and Thurber, and Brody, who was the chief financial officer of Seamless. So this brings us back to the idea that under Rangel and Rita and this court's other cases, the court doesn't have to march through every single piece of evidence that's before it. When it tells the narrative of what happened here, it makes findings of fact. Those findings of fact are not clearly erroneous. And the issue, the other thing that the law says is that we didn't have to make these disclosures because these investors had no right to know this information. They couldn't be involved in the operation of these companies, and so it's irrelevant to them how these companies are run. But all of the investors said, and if you look at the survey that Asian Foreman conducted, of investors in the relevant time period, 2006 to 2008, 96% said we didn't know, and if we had known, we would not have invested. That's materiality. It's just a focal item there. That finding is supported by the record. It's not clearly erroneous, and that's the end of the matter. Councilman, I ask you to please address the complaint opposing counsel that the government precipitated a letter-writing campaign from the victims in order to influence the outcome of the suit. Can you put your response to this allegation that was improper? I will put two responses. The first is that the Crime Victims' Rights Act requires the government to make its own determination about who the victims in the case are, to notify them about the proceedings, and to invite their participation, and then to facilitate that participation. That's what the AUSA here did. It was required by the statute, and it's not inconsistent with the process. The way the court handled the process is inconsistent with the stipulation between the parties. We know, Your Honor, the stipulation between the parties, which is a paragraph for a complete agreement, says that there will be a two-phase hearing. The first phase of which says it will determine the factual issue about the scope of the scheme and the relevant conduct. And the second phase, which will be traditional sentencing, looking at 3353A in the guidelines. So in that first scheme, we're looking at factual issues, and that's what the district court did. Since these letters came in during phase one, the district court inventoried them, gave them to the parties, and in phase one, the court said to the parties that all it was doing was giving the letters. Then one of the clerks pointed to the court three of the letters that raised factual issues. This is about CR 1955 to 1959. Those issues are what hurt our personally told investors regarding single-purpose entity status and whether Southwest sold to non-accredited investors. Those are factual issues about the scope of the scheme and the relevant conduct. Those are proper phase one issues. And the district court then asked some questions of Carter and gave him an opportunity to respond to those allegations. He gave his counsel an opportunity to address it on redirect. There's no due process issue here at all. Moreover, the court then didn't rely on any of that in its actual findings. And so to come up with a due process violation, they have to find reliance. So they have to show, first, false information, and secondly, reliance. And they haven't done either. So under the sports cases, particularly the Vander Workforced, I'm not sure how to pronounce that, case, they can't make up the due process claim, which is the claim they raised. If you look at their brief, it's not about a violation of the contract. It's not about Rule 32. It's about due process. And due process is specific contours that they haven't met here. Well, there is a claim that some of the number of victim letters are inaccurate information or inaccurate allegations, right? There's an offhand comment in their opening brief about that, and we address that in the footnote in our brief. Those allegations are factually correct, or at least there's a factual basis for them. But in any event, the district court didn't rely on any of that. And if the reliance prong is simply missing, as this court has said in its prior cases, there can be no due process violation. The district court's opinion is well-reasoned and thorough on supporting the record. If this court has no further questions, we'll rest on our brief. It appears not. Thank you, counsel McBottle. Very quickly. Counsel mentioned Tamara Satter. She met in the district court's law and discussed the investment activity that's part T-963-972. The attorneys were not confined to just drafting the documents. They ran the process. And it's also pertinent to note that the documents themselves instructed the investors and the people that read them not to rely on any other statements. So you have a situation where a business person, yes, trying to make business work. Well, lawyers who you trust are telling the investing group, don't listen to the business people. Read the documents. This is what you need to know. Mr. Harder. What do you make of the district court's reference to the testimony of Matt Marcos, who testified that after he mentioned the pervasive commingling to attorney law, he said that he would fail. I think he wasn't aware of it or wasn't aware that others were aware of it. The district court expressly addressed why perhaps it did not get to heart your position that it was the attorneys who were responsible for the reservations. Thank you for asking that question. Much appreciated. The district court repeatedly misstated and misconstrued the testimony of Mr. Marcos. That little word, and the government, too, creatively, dresses it up a whole lot more than what it actually consists of. Is it your position that the district court misquoted Mr. Marcos? Could you take us in the record into where Mr. Marcos' testimony is at this point? Ready, Your Honor. It's at Supplemental Excerpt Record 273. It says the way those transcripts got broken up, they got broken up in a number of different ways. But here, let me just quote to you. I don't want to read it for myself, so let me get there first. ACR to the secondary. Okay. And this is whose testimony? Mr. Marcos. Okay, so tell me what line. Because I was reading exactly what the district court said at line 16. What was his response to your mentioning this pervasive comment? He seemed panicked. He went pale. I think he wasn't aware of it, or wasn't aware that others were aware of it. So what did the district court misquote there? Well, first of all, this was a meeting. First of all, when Judge Simon's first opinion came out on the financial fact, he said that Mr. Duslaw had said he was aware. But then we had a process, and we tried to correct that. What is happening here? This is a question and answer back and forth between AUSA Garton and Mr. Duslaw referring to a meeting never recorded anywhere, never discussed, a meeting that they had in New York. When we were in New York first, Garton. Counsel, you accused the district court judge of misquoting his testimony. That was a verbatim quote of his testimony. Whether you agree or disagree about the airport and the testimony, the court didn't misquote it. Your Honor, this testimony went through a number of people. And you cited me to his page. I cited you to that page. And I cited you to that page because when you read the various characterizations of it, you end up with a understanding of what was taking place that doesn't bear support from the official record. All right. Could you finish up, Counsel, and then seize your time? Thank you, Your Honor. Thank you. Thank you to both counsel. The case is ID is submitted for a decision by the court.
judges: Tashima, Gould, Rawlinson